**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| James Gregory Younger,<br><br>Plaintiff,<br><br>v.<br><br>Wellpath Recovery Solutions; Erin Gaffney; Michelle Dube; C. Nickles; Dr. Benjamin Franklin Thomas, Jr., Carl Nesbitt; Latonia Grasty; South Carolina Department of Mental Health; Kelly Gothard; and Nursing Staff John and Jane Doe,<br><br>Defendants. | Case No. 2:24-cv-06066-JD-MGB<br><br>ORDER AND OPINION |

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Mary Gordon Baker, issued pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) (D.S.C.). (DE 116.) The Report recommends granting Defendants' Motion for Summary Judgment (DE 95) as to Plaintiff's federal claims, declining supplemental jurisdiction over the remaining state law assault-and-battery claim against Defendant Dr. Benjamin Franklin Thomas, Jr., and remanding that claim to the Richland County Court of Common Pleas.

After receiving an extension of time, Plaintiff, proceeding without counsel, filed objections. (DE 119; DE 122.) The Wellpath Defendants filed a reply asking the Court to overrule the objections and adopt the Report, while alternatively requesting that the Court retain supplemental jurisdiction and dismiss the remaining state law claim

with prejudice. (DE 125.) The Court liberally construes Plaintiff's objections and has reviewed de novo the portions of the Report specifically challenged. For the reasons below, the Court sustains the objections in limited part and otherwise overrules them. The Court adopts the Report as modified, grants summary judgment on the federal claims, and remands the remaining state law claim.

**A. Background**

The Report sets forth the relevant facts and legal standards, which the Court incorporates without a complete recitation. The Court provides the following summary as a brief background.

Plaintiff has been civilly committed to the custody of the South Carolina Department of Mental Health under the South Carolina Sexually Violent Predator Act since April 27, 2021. He is housed at a mental health treatment facility located on the South Carolina Department of Corrections compound. (DE 1-1 at 6, 8.) This action arises from dental extractions performed by Defendant Dr. Benjamin Franklin Thomas, Jr., on July 22 and August 5, 2021, and from the medical care, pain medication, and dietary accommodations Plaintiff received following those procedures. (*Id*. at 8–25.) Plaintiff asserts federal constitutional claims against Dr. Thomas, Wellpath Recovery Solutions, and several Wellpath employees, as well as a South Carolina assault-and-battery claim against Dr. Thomas. (*Id*. at 20–25.)

Dr. Thomas first evaluated Plaintiff on May 27, 2021, after Plaintiff reported tooth pain, sensitivity to temperature, and difficulty chewing. (DE 95-2; DE 95-4 at 1.) According to Dr. Thomas, Plaintiff's remaining teeth were substantially decayed,

and Dr. Thomas recommended extracting them in preparation for full dentures. Dr. Thomas avers that Plaintiff agreed with that treatment plan. (DE 95-4 at 1.) A June 21, 2021, communication form reflects that Plaintiff later requested an update concerning approval of the proposed dental procedure. (DE 95-5.)

On July 22, 2021, Dr. Thomas extracted several of Plaintiff's teeth and prescribed medication for pain. (DE 95-4 at 2; DE 95-6.) Plaintiff gives a materially different account of the manner in which the procedure was performed. In his verified Complaint, Plaintiff states that he remained restrained during the procedure, that Dr. Thomas applied excessive force and pressure, and that the procedure injured his upper jaw and left a hole and protruding fragments in his mouth. (DE 1-1 at 8–10.) Dr. Thomas maintains that he extracted teeth that were decayed, loose, and causing Plaintiff pain and that the procedure was performed normally and without serious incident. (DE 95-4 at 2.)

The medication administration records reflect that Plaintiff received acetaminophen with codeine on July 25 through July 28, 2021. (DE 95-7 at 11.) Plaintiff alleges, however, that he experienced severe pain during the interval following the procedure, repeatedly sought medical attention, and waited several days before receiving the prescribed medication. (DE 1-1 at 11–12.) He also alleges that meals were delivered in a form he could not eat and that his requests for food consistent with a soft-diet order were not adequately addressed. (*Id.* at 12.) On July 30, 2021, a facility provider observed what was described as a piece of tooth at an

extraction site, prescribed antibiotics and additional pain medication, and directed that Plaintiff return to a dentist promptly. (DE 95-8; *see also* DE 95-7 at 1–2, 9–10.)

Plaintiff states that, on July 31, 2021, he showed Defendant Erin Gaffney the condition of his mouth and asked not to be returned to Dr. Thomas. According to Plaintiff, Gaffney indicated that he would be seen by another dental provider. (DE 1-1 at 12–13.) Plaintiff was nevertheless transported back to the same dental facility on August 5, 2021. After Defendant Michelle Dube confirmed that he was at the correct location for his appointment, Dr. Thomas examined Plaintiff and performed additional extractions. (*Id*. at 14–16; DE 95-4 at 2; DE 95-9.) Plaintiff alleges that he again remained restrained, that Dr. Thomas used excessive force, and that Dr. Thomas injured his lower jaw and continued the procedure after Plaintiff asked him to stop. (DE 1-1 at 14–16.) Dr. Thomas avers that the extractions were properly performed and that he referred Plaintiff to an oral surgeon to address complications associated with Plaintiff's dental and bone condition. (DE 95-4 at 2.)

Upon Plaintiff's return to the facility on August 5, a medical provider confirmed that a soft-diet order was in place. (DE 95-10.) Plaintiff was evaluated again the following day for continuing pain, and the medication records reflect that he received the prescribed pain medication beginning August 7. (DE 95-11; DE 95-7 at 3.) Plaintiff thereafter communicated with Defendant Carl Nesbitt and other facility personnel about the consistency, preparation, and substitution of foods provided under his dietary order. (DE 95-12 at 1–4; DE 104-7 at 4–5.)

On August 20, 2021, Nurse Practitioner S. Franks documented Plaintiff's complaints of tenderness, pain while chewing, and possible loose bone fragments. Franks observed mild redness and tenderness without discharge or drainage, changed Plaintiff's diet to pureed or ground food with a nutritional supplement, and referred him to an oral surgeon. (DE 95-14.) Plaintiff was later informed that the oral surgery consultation had been scheduled. (DE 95-15.) On September 28, 2021, the oral surgeon recorded no exposed bone, good healing tissue, and no abscessed teeth, and recommended follow-up for extraction of Plaintiff's remaining teeth and fabrication of dentures. (DE 95-17; DE 95-18.)

An oral surgeon extracted Plaintiff's remaining teeth on December 6, 2021, and prescribed Norco, Periogard mouthwash, and Amoxicillin. (DE 95-20; DE 95-6 at 2–4.) A facility provider ordered an antibiotic and mouthwash upon Plaintiff's return. (DE 95-21.) At a December 8 follow-up, Plaintiff reported that Tylenol and Mobic were fairly managing his pain, that he was receiving chopped food, and that he was pleased with the food then being provided. (DE 95-22.) The medical records reflect that Plaintiff continued receiving dental treatment through 2024 and ultimately received implant-supported dentures following additional preparatory care. (DE 95-23.)

Plaintiff filed this action in the Richland County Court of Common Pleas on August 13, 2024, and Defendants removed it to this Court on October 24, 2024. (DE 1.) Defendants filed the pending Motion for Summary Judgment on January 30, 2026. (DE 95.) After the Court provided notice under *Roseboro v. Garrison*, 528 F.2d 309

(4th Cir. 1975), and granted extensions of time, Plaintiff filed a response in opposition, and Defendants filed a reply. (DE 96; DE 100; DE 104; DE 107; DE 111.)

**B. Report and Objections**

The Report recommended granting Defendants' Motion for Summary Judgment as to Plaintiff's federal claims, declining to exercise supplemental jurisdiction over the remaining state law assault-and-battery claim against Dr. Thomas, and remanding that claim to the Richland County Court of Common Pleas. (DE 116 at 31.)

The Report first recommended summary judgment for Defendants Nickles and Grasty, reasoning that Plaintiff appeared to concede dismissal of the claims against them and that the record did not otherwise establish their personal involvement in a constitutional deprivation. (*Id.* at 14–15.) As to the remaining individual Defendants, the Report concluded that Plaintiff's custody status under the South Carolina Sexually Violent Predator Act most closely resembles that of a pretrial detainee. Relying on *Treece v. McGill,* Civ. No. 3:08-cv-3909-DCN-JRM, 2010 WL 3781695, at *4 (D.S.C. Sep. 21, 2010); *see also Matherly v. Andrews,* 859 F.3d 264, 275 (4th Cir. 2017), and *Short v. Hartman,* 87 F.4th 593, 606 (4th Cir. 2023), it applied the Fourteenth Amendment's objective deliberate indifference standard to Plaintiff's medical care claims and the pretrial-detainee punishment framework to his conditions-of-confinement claim. (*Id.* at 15–18.)

Applying those standards, the Report concluded that the record did not permit a reasonable finding that Dr. Thomas acted with deliberate indifference or in an

objectively unreasonable manner in providing dental treatment. It also concluded that Gaffney and Dube did not act unreasonably or expose Plaintiff to an unjustifiably high risk of harm by returning him to Dr. Thomas for the August 5 procedure. (*Id*. at 18–21.) As to the medication claims, the Report found that the delays following the July and August procedures were brief and caused no substantial harm, and that the treatment provided after the December procedure amounted, at most, to negligence or disagreement concerning the type and quantity of medication furnished. (*Id*. at 21–23.) The Report also concluded that Plaintiff's dietary claim against Nesbitt failed because the record did not show punitive conditions, intentional interference with prescribed treatment, or harm resulting from the delay in receiving a satisfactory diet. (*Id*. at 23–25.)

The Report also concluded that Plaintiff had not established supervisory liability against the individual Defendants and that those Defendants were entitled to qualified immunity because the record disclosed no constitutional violation. (*Id*. at 25–26.) It determined that Wellpath could not be held liable under respondeat superior and that the claim against it could not proceed in the absence of an underlying constitutional violation by an employee. (*Id*. at 27–28.) Finally, the Report recommends denying injunctive relief because Plaintiff did not establish an ongoing violation of federal law and declining supplemental jurisdiction over the remaining assault-and-battery claim against Dr. Thomas. (*Id*. at 28–31.)

## C. Standards of Review

### 1. Report and Recommendation

The Magistrate Judge's recommendation has no presumptive weight, and the Court remains responsible for the final determination. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must make a de novo determination of any portion of the Report to which a party makes a specific written objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court may accept, reject, or modify the recommended disposition, in whole or in part. 28 U.S.C. § 636(b)(1). When no specific objection is made, the Court need only determine that no clear error appears on the face of the record before accepting the recommendation. *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### 2. Summary Judgment

Summary judgment is appropriate when the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence would permit a reasonable jury to return a verdict for the nonmoving party, and a fact is material if it could affect the outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views competent evidence and draws reasonable inferences in the nonmovant's favor. It may not weigh evidence or resolve genuine credibility disputes.

A declaration used to oppose summary judgment must be based on personal knowledge, state facts that would be admissible, and show that the declarant is

competent to testify. Fed. R. Civ. P. 56(c)(4). A verified complaint is equivalent to an opposing affidavit to the extent its allegations are based on personal knowledge. *Goodman v. Diggs*, 986 F.3d 493, 498-500 (4th Cir. 2021). Liberal construction of a *pro se* filing does not permit the Court to treat legal conclusions, unsupported medical diagnoses, or speculation as evidence.

## D. Discussion

Plaintiff raises nine labeled objections and a final objection to the recommended disposition. He principally challenges the constitutional standard applied by the Report, the treatment of the evidentiary record and delayed-care harm, the rulings concerning the individual and corporate Defendants, and the recommended disposition of his requests for injunctive and state law relief. The Court addresses the objections by subject below.

Plaintiff concedes that summary judgment is appropriate for Defendants C. Nickles and Latonia Grasty. (DE 122 at 1.) Summary judgment will, therefore, be entered for those Defendants. The Court addresses the disputed issues as they apply to the remaining Defendants.

### 1. The governing constitutional standards

#### a. Civil commitment, medical care, and adequate food

Plaintiff's first objection challenges the Report's use of *Short* as the governing framework. He argues that *Youngberg v. Romeo*, 457 U.S. 307 (1982), applies because his confinement under South Carolina's Sexually Violent Predator Act is a civil commitment for care and treatment. (DE 122 at 1–2.) Defendants respond that

persons committed under sexually violent predator statutes most closely resemble pretrial detainees and, therefore, contend that the Report correctly applied *Short*'s objective deliberate indifference framework. (DE 125 at 2–3.) The Report agreed, relying on *Matherly* and district court decisions involving the SVPTP. The Court agrees with the Report's ultimate recommendation that Defendants are entitled to summary judgment, but not with its constitutional premise. Accordingly, the Court sustains Plaintiff's objection in part.

In *Youngberg*, the Supreme Court held that an involuntarily committed person retains substantive liberty interests in reasonably safe conditions, freedom from unreasonable bodily restraint, and such minimally adequate training as those interests require. 457 U.S. at 315–22. In determining whether the State has adequately protected those interests, courts ask whether professional judgment was in fact exercised. A decision by a qualified professional is presumptively valid, and liability may be imposed only when the decision "is such a substantial departure from accepted professional judgment, practice, or standards" that it demonstrates the decision was not actually based on professional judgment. *Id.* at 323.

The Fourth Circuit extended that standard to inadequate medical care claims brought by involuntarily committed psychiatric patients in *Patten v. Nichols*, 274 F.3d 829, 837–43 (4th Cir. 2001). It later reaffirmed the importance of the purpose of confinement in *Doe 4 ex rel. Lopez v. Shenandoah Valley Juvenile Center Commission*, holding that the professional-judgment standard governed medical care for civil detainees held in a secure juvenile facility. 985 F.3d 327, 339–43 (4th Cir. 2021). *Doe*

*4* explained that the nature of the facility is not dispositive and cited *Matherly* as applying *Youngberg* to a person involuntarily committed in a prison-based program designed to treat sexual dangerousness. *Id.* at 341–42.

*Short* does not displace those holdings. It addressed pretrial detainees and held that the objective *Kingsley–Bell* standard governs their claims of deliberate indifference to serious risks of harm. 87 F.4th at 605–12. It did not address involuntary civil commitment, cite *Patten* or *Doe 4*, or purport to replace the professional judgment rule governing persons committed for care and treatment. Nor does *Matherly* require application of the pretrial detainee framework to the care claims presented here. *Matherly* borrowed the pretrial non-punishment framework when evaluating general restrictions imposed on a sexually dangerous civil detainee, but it expressly incorporated *Youngberg*'s requirement that professional judgment be exercised and its deference to administrators of the treatment program. 859 F.3d at 274–76.

South Carolina's statutory scheme confirms that the purpose of Plaintiff's commitment is long-term control, care, and treatment. *See* S.C. Code Ann. §§ 44-48-20, -100. And in the unpublished but directly analogous decision *Christian v. Magill*, the Fourth Circuit applied *Youngberg* and *Patten* to an adequate-food claim brought by a resident of the same South Carolina SVPTP. 724 F. App'x 185, 187–88 (4th Cir. 2018) (per curiam). The Court, therefore, sustains Plaintiff's first objection to the extent the Report applied *Short* to the challenged dental care, referral and follow-up

decisions, medication provision, and medically necessary diet. Those claims are evaluated under *Youngberg*, *Patten*, *Doe 4*, and *Christian*.

**b. Scope and effect of the ruling**

The professional judgment standard does not make every action by every employee presumptively valid. Deference attaches to decisions by persons competent by education, training, or experience to make the particular decision at issue and to day-to-day care decisions made by employees acting under qualified professional supervision. *Youngberg*, 457 U.S. at 323 & n.30. Where the record does not establish that a Defendant was qualified to make the particular clinical decision or acted under professional supervision, the Court does not presume that Defendant's own decision was professionally valid.

The Court must determine whether professional judgment was actually exercised; the mere provision of some treatment is not necessarily sufficient. *See Doe 4*, 985 F.3d at 343–45. Plaintiff must also produce defendant-specific evidence of personal involvement and causation. As explained below, application of the correct standard does not change the recommended disposition because the evidence does not permit a reasonable jury to find that any named Defendant substantially departed from accepted professional judgment or personally caused a constitutional deprivation.

Plaintiff's ninth objection separately asserts that the Report applied a subjective deliberate-indifference element. It did not. The Report quoted and applied *Short*'s objective test, under which actual subjective knowledge is unnecessary. That

objection is overruled. The Court nevertheless does not adopt *Short* as the governing framework for the care claims identified above. (DE 116 at 16.) Plaintiff's references to the Eighth Amendment likewise do not supply a separate medical-care standard or an independent basis for liability on this record.

**2. The Rule 56 record and Dr. Thomas's affidavit**

Before applying the professional-judgment standard, the Court clarifies the materials that form the Rule 56 record. The Report treated the notarized Complaint as verified, and no party specifically challenges that determination. Plaintiff's summary judgment response is also signed under penalty of perjury. (DE 104 at 19.) Under *Goodman v. Diggs*, the Court considers Plaintiff's specific firsthand statements concerning the force and pressure he experienced, his pain, bleeding, visible fragments, difficulty eating, requests for assistance, and statements made to him by Defendants. 986 F.3d 493, 498–500 (4th Cir. 2021).

The verified status of those filings does not convert legal conclusions, medical diagnoses, opinions concerning dental standards, or speculation about corporate motives into competent evidence. Whether Plaintiff sustained a fracture of a particular jaw structure, whether a handwritten x-ray notation reflects a fracture caused by one of Dr. Thomas's procedures, and whether a particular extraction technique substantially departed from accepted dental practice involve specialized diagnosis, causation, or professional standards. Plaintiff may testify to what he saw and felt, but his unsupported medical conclusions do not establish those matters.

In the closing portion of his objections, Plaintiff asks the Court to strike Dr. Thomas's affidavit. He challenges Dr. Thomas's statement that Plaintiff's dental decay was likely associated with inadequate dental hygiene over a period of many years, arguing that the statement was not based on personal knowledge. (DE 122 at 9.) The Court declines to strike the affidavit wholesale. Dr. Thomas may offer facts based on his personal examination, treatment, and observations. The Court need not decide whether the challenged historical causation statement satisfies the requirements governing opinion testimony because the statement is immaterial, and the Court does not rely on it.

The Court likewise does not treat Dr. Thomas's assertion that the extractions were performed in a normal or proper manner as independently establishing the accepted professional standard. The affidavit is considered for matters within Dr. Thomas's personal knowledge, including his examinations, treatment, prescriptions, and referrals. The Court makes no credibility determination in his favor, but asks whether the complete Rule 56 record, viewed in Plaintiff's favor, permits a reasonable finding under the governing constitutional standard.

**3. The dental procedures and the return to Dr. Thomas**

Plaintiff's separate objection concerning Dr. Thomas—Objection Eight—consists of one sentence and does not identify supporting argument or record evidence. (DE 122 at 7.) Plaintiff's first objection, however, challenges the constitutional standard applied throughout the Report's merits analysis and requests review under the professional judgment standard. Construing the *pro se* objections

together, the Court reviews the dental treatment claims under the correct standard and considers the summary judgment materials identified in Plaintiff's verified response. (DE 104.)

Plaintiff relies on photographs, declarations from other residents, and a panoramic x-ray containing a handwritten notation that includes the words "fractured bone." Those materials, viewed in Plaintiff's favor, support his account that the procedures caused severe pain, bleeding, and visible fragments. They do not establish who made the handwritten notation, what the notation medically signifies, or whether any identified condition resulted from Dr. Thomas's extraction technique.

The Court does not hold that expert testimony is categorically required in every professional judgment case. Here, however, the challenged conduct involves the technical manner in which multiple dental extractions were performed. Nothing in the summary judgment record identifies the accepted professional considerations governing those procedures or provides a nonspeculative basis from which a jury could find that Dr. Thomas's treatment represented such a substantial departure from accepted professional judgment that it was not actually based on professional judgment.

The evidence could support a finding that Plaintiff suffered significant pain or that complications followed the procedures. Those facts alone, however, do not establish the constitutional departure required by *Youngberg*. The Court expresses no view on the merits of Plaintiff's remaining state law claim.

The claims against Gaffney and Dube concerning Plaintiff's August 5 return to Dr. Thomas also fail. Plaintiff alleges that Gaffney said he would be sent to another dentist and that Dube later confirmed he was at the correct location for the follow-up. The July 30 medical evaluation called for a prompt return to a dentist, and Dr. Thomas was Plaintiff's treating dentist.

Even accepting Plaintiff's account of Gaffney's assurance, the record does not show that either Gaffney or Dube made the clinical referral decision, overrode a professional contraindication to further treatment by Dr. Thomas, knew that the return lacked a professional basis, or otherwise caused constitutionally inadequate care. The alleged failure to provide Plaintiff's preferred provider, or to honor an assurance that another dentist would see him, does not, without more, create a triable constitutional claim.

Plaintiff concedes the claims against Nickles and Grasty, and the record contains no evidence that either personally participated in the dental procedures or caused a constitutional deprivation. Summary judgment is, therefore, granted to Dr. Thomas, Gaffney, Dube, Nickles, and Grasty on the federal claims arising from the dental treatment and Plaintiff's return to Dr. Thomas.

**4. The medication-delay claims**

Plaintiff's second and third objections concern the Report's treatment of harm and its characterization of the medication-delay theory. The Court sustains the second objection in a limited respect. "Substantial harm" is not a freestanding element of *Youngberg*'s professional judgment standard. The Court, therefore, does

not adopt the Report's suggestion that a delayed-care claim necessarily fails absent separate medical proof of permanent or independently verified injury. Plaintiff's verified description of severe pain is relevant to the adequacy of care, causation, and injury.

The unpublished decision in *Formica v. Aylor*, although arising under the Eighth Amendment, likewise recognizes that unnecessarily prolonged severe pain *may* constitute cognizable harm in a delayed-treatment case. 739 F. App'x 745, 755–59 (4th Cir. 2018). The Court considers that decision by analogy rather than as defining a separate element of Plaintiff's claim.

The claims nevertheless fail for lack of defendant-specific personal involvement and causation. After the July 22 procedure, the record reflects administration of the prescribed codeine medication beginning July 25. After the August 5 procedure, administration began August 7. Plaintiff's verified account permits an inference that he experienced pain during those intervals and requested assistance from nursing and unit staff. But the evidence does not identify an action or decision by Gaffney, Dube, Nickles, Grasty, or Nesbitt that caused either delay. It does not show that any of those Defendants controlled the timing of administration, received and disregarded a request before the medication was provided, or made or ratified a decision that substantially departed from accepted professional judgment. Their supervisory or administrative titles do not supply personal liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

The December 6 medication issue does not create a triable federal claim either. The oral surgeon prescribed Norco, Periogard mouthwash, and Amoxicillin. Upon Plaintiff's return, a facility provider ordered Amoxicillin and mouthwash. At the December 8 examination, Plaintiff reported that Tylenol and Mobic were fairly managing his pain and that he was receiving chopped food with which he was pleased. The record thus reflects an alternative treatment decision rather than an unexplained abandonment of care. No evidence connects that decision to a named Defendant or permits a reasonable finding that the regimen substantially departed from accepted professional judgment.

Accordingly, the Court does not adopt the Report's categorical substantial-harm reasoning. The Court also recognizes that Plaintiff offered the Miller declaration (DE 104 at 10; DE 104-4) to support a theory of Wellpath custom rather than merely a claim against Gaffney. The recommended judgment nevertheless remains appropriate because Plaintiff has not produced evidence from which a reasonable jury could find the required personal involvement, substantial departure from accepted professional judgment, and causal connection.

**5. The dietary claim against Nesbitt**

Because Plaintiff challenges the constitutional standard applied throughout the Report and specifically invokes the alleged deprivation of adequate food, the Court reviews the dietary claim under the professional judgment standard. Plaintiff alleges that whole or otherwise unsuitable food was delivered after his dental

procedures, that pain prevented him from eating some meals, and that Nesbitt delayed satisfactory implementation of a soft, pureed, or ground diet.

Plaintiff's verified account permits an inference that some trays did not conform to the prescribed diet and that pain prevented him from eating portions of some meals. The record includes an August 5 soft-diet order and an August 20 order for a pureed or ground diet, nutritional supplementation, and an oral surgery referral. (DE 104-7 at 2–3.) The Court, therefore, does not reject Plaintiff's claim merely because he lacks separate proof of permanent or independently verified harm.

The claim nevertheless fails as to Nesbitt. The record does not show that Nesbitt made the clinical decision concerning the diet Plaintiff required, countermanded a medical diet order, personally prepared or delivered a particular noncompliant tray, or directed that a prescribed item be withheld. Nor does it permit a finding that he knowingly caused the diet orders to go unimplemented.

The documented communications reflect that Nesbitt responded to Plaintiff's complaints, explained available substitutions, and instructed Plaintiff to return a tray that did not comply with the prescribed diet so that it could be corrected. By December 8, Plaintiff reported that he was receiving chopped food and was pleased with it. Imperfect or delayed implementation may support criticism of how the diet orders were carried out, but the evidence does not permit a reasonable jury to find that Nesbitt personally caused constitutionally inadequate food or participated in conduct representing a substantial departure from accepted professional judgment.

Summary judgment is, therefore, granted on the federal dietary claim. *See Christian*, 724 F. App'x at 187–88.

**6. Wellpath's corporate liability**

Plaintiff's fourth objection argues that *Monell* principles apply only to local governmental entities and not to a private contractor providing services for a state agency. Binding precedent rejects that distinction. In *Austin v. Paramount Parks, Inc.*, the Fourth Circuit held that the principles of municipal liability apply equally to a private corporation acting under color of state law. 195 F.3d 715, 727–30 (4th Cir. 1999). Such a corporation is not liable under § 1983 merely because it employed an alleged tortfeasor. The plaintiff must show that an official policy or custom caused the federal deprivation. *See id.*; *see also Monell v. Department of Social Services*, 436 U.S. 658, 691–94 (1978).

Wellpath's status as a for-profit contractor, its contractual relationship with a state rather than a county, and the state law definition of a governmental employee do not create respondeat superior liability under federal law. Those considerations may matter to distinct state law defenses, but they do not alter § 1983's policy-or-custom and causation requirements.

Plaintiff asserts a cost reduction practice and relies on the Miller declaration to show that another resident did not receive prescribed medication. (DE 104-4.) Even treating the declaration as competent evidence of Miller's personal experience, one additional medication incident—without evidence identifying its cause, frequency,

duration, decisionmaker, or connection to an established corporate directive—does not establish a persistent and widespread custom with the force of law.

Nor does the record identify a final Wellpath policymaker who directed the delays alleged here, a deficient training policy, or a causal connection between a corporate practice and Plaintiff's treatment. In addition, the record does not establish an underlying constitutional deprivation caused by a Wellpath employee. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Wellpath is, therefore, entitled to summary judgment.

**7. Qualified immunity**

Plaintiff's fifth objection is well taken as to the Report's rationale. The Report states that the individual Defendants are entitled to qualified immunity "because they are government officials." (DE 116 at 26.) The remaining individual Defendants, however, are alleged to have acted through a private contractor and are not automatically entitled to qualified immunity merely because they acted under color of state law.

Whether a particular private actor may invoke qualified immunity requires consideration of both historical practice and the purposes underlying government-employee immunity. *See Richardson v. McKnight*, 521 U.S. 399, 404–12 (1997); *see also Gregg v. Ham*, 678 F.3d 333, 339–41 (4th Cir. 2012); *see also Filarsky v. Delia*, 566 U.S. 377, 383–94 (2012). Neither private status nor profit motive, standing *alone*, categorically resolves eligibility.

Because the Court concludes that the evidence does not establish a constitutional violation, it need not decide whether any individual Defendant is eligible to assert qualified immunity or whether the asserted rights were clearly established. The Court, therefore, sustains the objection only as to the Report's abbreviated rationale and does not adopt qualified immunity as an independent basis for judgment. The judgment rests on the merits of the federal claims.

**8. Injunctive relief**

Plaintiff's seventh objection challenges the recommendation concerning injunctive relief. (DE 122 at 6–7.) The Complaint requests a properly fitting set of dentures and additional implants. Plaintiff later filed and withdrew a separate motion for preliminary injunctive relief, but the request for prospective relief in the Complaint remains part of the case. (DE 99; DE 103; DE 109.)

Plaintiff argues that the Report erred in finding no ongoing federal violation and disputes its reliance on the Eleventh Amendment. The Court need not resolve Plaintiff's broader Eleventh Amendment argument. No Defendant presently before the Court invokes sovereign immunity, and the Report's discussion of *Ex parte Young*, 209 U.S. 123 (1908), is unnecessary to the disposition of the requested relief.

The record reflects that Plaintiff ultimately received implant-supported dentures following additional preparatory care. To the extent the treatment requested in the Complaint has been furnished, the request is moot. To the extent Plaintiff seeks different or additional treatment, he has not established an ongoing federal violation or a real and immediate threat of recurrence. Because the federal

claims fail on the merits, Plaintiff is not entitled to permanent injunctive relief. The seventh objection is, therefore, overruled, although the Court does not adopt the Report's *Ex parte Young* analysis.

**9. The remaining state law claim and related requests**

Plaintiff objects to the Report's recommendation that the Court remand his assault-and-battery claim against Dr. Thomas and asks the Court instead to retain the claim for trial, conduct settlement proceedings, and appoint counsel. Defendants likewise ask the Court to depart from the Report's recommended disposition, but in the opposite direction: they alternatively request that the Court retain supplemental jurisdiction and dismiss the assault-and-battery claim with prejudice in the interests of convenience and judicial economy. (DE 125 at 6–7.) The Court declines both requests and adopts the Report's recommendation to remand the remaining state-law claim.

Once all claims within the Court's original jurisdiction have been resolved, the Court may decline supplemental jurisdiction over the remaining state claim. *See* 28 U.S.C. § 1367(c)(3). In exercising that discretion, the Court considers judicial economy, convenience, fairness, and comity. *See Henderson v. Harmon*, 102 F.4th 242, 251–52 (4th Cir. 2024). And because this action was removed from state court, the Court may remand the pendent state law claim rather than dismiss it. *See Hinson v. Norwest Financial South Carolina, Inc.*, 239 F.3d 611, 616–17 (4th Cir. 2001); *see also Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357 (1988).

On balance, those considerations favor remand. The remaining claim arises under South Carolina assault-and-battery law and turns on questions including the scope of Plaintiff's consent to dental treatment and the legal significance of the force allegedly used during that treatment. Those issues are distinct from the federal constitutional questions resolved above. Although this action has progressed through discovery and summary judgment proceedings, no federal claim remains for trial, the state court can make use of the developed record, and neither convenience nor judicial economy requires this Court to decide the merits of the remaining state law claim. Comity, therefore, weighs in favor of returning that claim to the forum in which Plaintiff originally filed it.

The Court accordingly declines to exercise supplemental jurisdiction under § 1367(c)(3) and remands the assault-and-battery claim against Dr. Thomas to the Richland County Court of Common Pleas. In doing so, the Court expresses no view on the merits of that claim. Defendants' alternative request that the Court retain jurisdiction and dismiss the claim with prejudice is, therefore, denied, as is Plaintiff's request that the Court retain the claim for trial.

This Order adjudicates only the federal claims addressed above. Because those claims are resolved and the remaining claim is remanded, Plaintiff's requests for appointment of counsel and a federal settlement proceeding are denied without prejudice to any request for appropriate relief he may make in state court.

**10. The Unserved Doe Defendants**

The caption continues to identify Nursing Staff John and Jane Doe as Defendants. Those Defendants did not join the Motion for Summary Judgment, and the Report did not expressly recommend disposition of the claims against them. The docket does not reflect that Plaintiff has identified or served them.

On August 7, 2026, the Court entered a Text Order directing Plaintiff to show cause within fourteen days why the claims against the Doe Defendants should not be dismissed without prejudice under Federal Rule of Civil Procedure 4(m). (DE 123.) The Court specifically directed Plaintiff, if he contended that the Doe Defendants could now be identified and served, to provide their names to the extent known, sufficient information to permit service, and an explanation why additional time was warranted. The Court further directed Plaintiff to identify any basis for good cause excusing his failure to identify or serve them within the time allowed by Rule 4(m). (*Id.*)

Plaintiff timely responded. (DE 126.) Rather than identify either Doe Defendant, provide information sufficient to permit service, assert good cause, or request additional time, Plaintiff stated that, "[w]ithout admission of merits or absence of merits of the defendants['] actions," he "withdraws his directive to show cause for nursing staff Jane & John Doe." (*Id.*) Construing the *pro se* filing liberally and in the context of the Court's Show Cause Order, Plaintiff's response does not contest dismissal of the Doe Defendants and provides no basis for extending the time for service.

The period for identifying and serving these Defendants has long passed. The deadline for amendment of pleadings expired on June 26, 2025, discovery closed on August 25, 2025, and the case thereafter proceeded through dispositive motion briefing. Plaintiff has not identified either Doe Defendant, supplied information from which service could be effected, demonstrated good cause for the failure to effect service, or identified circumstances warranting a discretionary extension. *See Gelin v. Shuman*, 35 F.4th 212, 220–21 (4th Cir. 2022).

Accordingly, Plaintiff's claims against Nursing Staff John and Jane Doe are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 4(m).

### E. Conclusion

For the foregoing reasons, it is ORDERED that:

1. Plaintiff's objections to the Report and Recommendation (DE 122) are **SUSTAINED IN PART** to the extent the Court applies *Youngberg*'s professional judgment standard to the medical-care and adequate-food claims, declines to adopt a categorical substantial harm requirement, and declines to adopt the Report's conclusion that the individual Defendants are entitled to qualified immunity merely because they are government officials; the objections are otherwise **OVERRULED**;

2. the Report and Recommendation (DE 116) is **ADOPTED AS MODIFIED** by this Order;

3. Defendants' Motion for Summary Judgment (DE 95) is **GRANTED** as to all federal claims asserted against the moving Defendants;

4. judgment shall be entered in favor of Wellpath Recovery Solutions, Erin Gaffney, Michelle Dube, C. Nickles, Dr. Benjamin Franklin Thomas, Jr., Carl Nesbitt, and Latonia Grasty on Plaintiff's federal claims;

5. Plaintiff's claims against Nursing Staff John and Jane Doe are DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 4(m);

6. Plaintiff's request for permanent injunctive relief is **DENIED**;

7. the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining South Carolina assault-and-battery claim against Dr. Thomas;

8. the remaining state law claim is **REMANDED** to the Richland County Court of Common Pleas, Case No. 2024-CP-40-04933;

9. Plaintiff's requests for appointment of counsel and a federal settlement proceeding are **DENIED WITHOUT PREJUDICE** to any request for appropriate relief he may make in state court; and

10. the Clerk of Court shall enter judgment on the federal claims consistent with this Order, transmit a certified copy of this Order to the Clerk of the Richland County Court of Common Pleas, and close the federal case.

**IT IS SO ORDERED.**



Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 20, 2026

**NOTICE OF RIGHT TO APPEAL**

A party seeking to appeal must file a notice of appeal with the Clerk of Court within thirty (30) days after entry of the judgment. Fed. R. App. P. 3, 4(a)(1)(A).